**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALISA WALTON, | |
| *Plaintiff,* | |
| v. | No. 23-cv-2213 (DLF) |
| LEE ZELDIN, | |
| *Defendant.* | |

**MEMORANDUM OPINION**

Alisa Walton brings this action against the Administrator of the U.S. Environmental Protection Agency ("EPA"), under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* Am. Compl., Dkt. 20-1. She alleges that the defendant discriminated and retaliated against her because of her race and sex. Before the Court is the defendant's Motion to Dismiss, or in the alternative, Motion to Transfer, Dkt. 21. For the reasons that follow, the Court will grant in part the defendant's motion to dismiss and transfer the surviving claims to the District Court for the Northern District of Texas.

I.    BACKGROUND[1]

Walton is an "African American" female who was employed as a "Special Agent/Criminal Investigator" in EPA's Office of Inspector General ("OIG"), Office of Investigations ("OI"). Am. Compl. ¶ 1. OIG, headed by EPA's Inspector General, conducts investigations to prevent fraud, mismanagement, and abuse related to federal environmental laws and regulations. *Id.* ¶¶ 5–6. OI is the component of OIG responsible for criminal investigations, and it is headed by the Assistant

---

[1] For purposes of this motion to dismiss, the Court accepts as true all material factual allegations in the complaint. *See Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

Inspector General for Investigations and his Deputies.  *Id.*  OIG and OI are headquartered in Washington, D.C., with five divisional offices, twelve regional offices, and a multitude of field offices around the country.  *Id.* ¶ 6.  Each OI regional office is headed by a Special Agent in Charge, and one or more Assistants.  *Id.*

Walton is a resident of Texas, and she was employed in OIG's Dallas field office beginning in 2006.  *Id.* ¶¶ 1, 4.  At all relevant times, Sean Earle was a Deputy Assistant Inspector General for Investigations stationed in Washington, D.C and tasked with overseeing regional offices.  *Id.* ¶¶ 6, 13.  The complaint alleges that Earle "frequently and often makes angrily discriminatory and derogatory remarks" and "pressured" his subordinates to take "disparately harsh actions toward African American Special Agents."  *Id.* ¶ 13.  Around 2019, Earle allegedly told Walton's direct supervisor that Walton "ought to be fired or demoted."  *Id.* ¶ 17.

In July 2020, Garrett Westfall was hired as an Assistant Special Agent in Charge stationed in the Dallas field office.  *Id.* ¶ 26.  Dan Hawthorne, a Special Agent in Charge stationed in the Denver field office, was Westfall's supervisor.  *Id.*  After Westfall was hired and became Walton's direct supervisor, Westfall and Hawthorne allegedly ignored Walton's previously favorable performance ratings and gave her "the lowest possible score for a Fully Successful" rating for the Fiscal Year 2020 performance period.  *Id.* ¶ 30.

Around April 2021, Hawthorne retired, and Earle took over as acting Special Agent in Charge and as Westfall's direct supervisor.  *Id.* ¶ 27.  Westfall allegedly "had reason to know" about "Earle's animus toward African American and female Special Agents" and was "beholden to Earle's support for his [future] promotion[s]."  *Id.* ¶¶ 27, 40.  In October 2021, Westfall gave Walton a performance rating of "unacceptable" for the Fiscal Year 2021.  *Id.* ¶¶ 41–43.  During that fiscal year, Walton's "major investigative work" involved nine cases out of the Dallas office.

*Id.* ¶ 36.  Walton alleges that Westfall improperly rated her against the wrong performance criteria;

and falsely accused her of failing to timely communicate, improperly documenting chain of

custody, incorrectly recording dates, and other performance mistakes not attributable to her.  *Id.*

¶¶ 42, 44, 48–52.  In November 2021, Westfall placed Walton on a "Performance Improvement

Plan"—an EPA protocol designed to give an employee "clear notice that . . . she may be

reassigned, demoted, or removed if [her] performance does not" improve.  *Id.* ¶ 55.

Walton initiated contact with EEO in November 2021 and filed a formal charge on

February 15, 2022.  *Id.* ¶¶ 61–63.  Her charge alleged (1) race and gender discrimination based on

her "unacceptable" performance rating and her placement on the Performance Improvement Plan;

(2) retaliation based on an EEO charge she had previously filed in 2015; and (3) a hostile work

environment claim.  *See* Clark Decl., Ex. A, at 7, Dkt. 21-3.

On March 1, 2022, Westfall removed Walton as the lead special agent from a "highly

significant OIG investigation" and replaced her with a "less accomplished Caucasian male."  Am.

Compl. ¶¶ 64, 83.  Also on March 1, he issued her a "Notice of Proposed Removal" for the

termination of her employment.  *Id.* ¶ 65.  Westfall submitted the Notice for final approval to

Thomas Roelke, a Deputy Assistant Inspector General for Investigations stationed in Washington,

D.C.  *Id.* ¶ 6, 65.  Roelke denied the removal but refused Walton's request to be reassigned to a

new position.  *Id.* ¶ 72.

In May 2022, OIG opened an internal misconduct investigation into Walton's potential

inflation and falsification of her Law Enforcement Availability pay.  *Id.* ¶¶ 84, 90.  Walton alleges

that the investigation was authorized by Mark Perez, the acting Assistant Inspector General for

Investigations stationed in Seattle.  *Id.* ¶ 84.  Also in May 2022, Earle learned of Walton's February

2022 EEO charge, after OIG rejected Walton's request for mediation.  *Id.* ¶ 87.

On May 10, 2022, Walton requested to amend her EEO charge to "add two additional claims to the hostile work environment allegation." Clark Decl., Ex. B, at 13. She highlighted two occurrences: the March 2022 Notice of Proposed Removal, and the May 2022 misconduct investigation. *Id.* As to the first, she alleged that the "supervisor who issued the proposed removal [was] Garrett Westfall" and explicitly declined to name Roelke as a discriminatory actor. *Id.* As to the second, she asserted that the "internal [misconduct] investigation was initiated by Garrett Westfall." *Id.* In a Final Agency Decision issued on May 2, 2023, EPA rejected Walton's discrimination, retaliation, and hostile work environment claims. *See* Final Agency Decision, Clark Decl., Ex. E, at 18–19. The agency evaluated the Notice and misconduct investigation solely in the context of Walton's hostile work environment claim. *Id.*

Walton filed suit on July 31, 2025. *See* Compl., Dkt 1. The amended complaint asserts two counts under Title VII: (I) discrimination based on her race, sex, and race plus sex; and (II) retaliation. Am. Compl. ¶¶ 97–123. The defendants move to dismiss or to transfer this action to the Northern District of Texas. *See* Mot. to Dismiss, Dkt. 21.

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550

U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," *Iqbal*, 556 U.S. at 678, but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility," *id.* (internal quotation marks omitted).

Rule 12(b)(3) "instructs the court to dismiss or transfer a case if venue is improper or inconvenient in the plaintiff's chosen forum." *Sanchez ex rel. Rivera-Sanchez v. United States*, 600 F. Supp. 2d 19, 21 (D.D.C. 2009). The Court accepts the plaintiff's well-pleaded allegations regarding venue as true and draws reasonable inferences from those allegations in favor of the plaintiff. *See Abraham v. Burwell*, 110 F. Supp. 3d 25, 28 (D.D.C. 2015). "The court need not, however, accept the plaintiff's legal conclusions as true, and may consider material outside of the pleadings." *Id.* (citation omitted). "The plaintiff has the burden to establish that venue is proper since it is his obligation to institute the action in a permissible forum." *Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 414 (D.D.C. 2020) (internal quotation marks omitted), *aff'd*, No. 20-5103 (D.C. Cir. June 2, 2021).

## III.    ANALYSIS

The defendant moves to dismiss Walton's amended complaint for failure to exhaust and to state her claims under Title VII. The defendant also contends that venue is improper in the District of Columbia and moves to dismiss or to transfer this action to the Northern District of Texas. The Court will address these arguments in turn.

### A.    Exhaustion

A federal employee raising Title VII claims must exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission before bringing suit in federal district court. *Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015); *see generally* 42 U.S.C.

§ 2000e-5.  The exhaustion requirement limits the scope of an employee's federal suit "to claims that are like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (cleaned up).  A claim is "reasonably related" to an EEOC charge if "[a]t a minimum," the claim would "arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526–27 (D.C. Cir. 2019) (internal quotation marks and citation omitted).  Generally, a Title VII plaintiff "'must timely exhaust administrative remedies for each discrete act alleged,' even if the acts are related." *Mount v. Johnson*, 36 F. Supp. 3d 74, 83–84 (D.D.C. 2014) (quoting *Laughlin v. Holder*, 923 F.Supp.2d 204, 209 (D.D.C.2013)).  The Title VII exhaustion requirement, "though mandatory, is not jurisdictional," and therefore any alleged failure to exhaust should be analyzed under Rule 12(b)(6).  *Douglas v. Donovan*, 559 F. 3d 549, 556 n.4 (D.C. Cir. 2009).

The defendant argues that Walton failed to exhaust most of the discrete acts that she now alleges as the bases for her discrimination and retaliation claims.  Walton's EEO charge asserted (1) discrimination and retaliation claims based on her "unacceptable" Fiscal Year 2021 rating and on her placement on the Performance Improvement Plan; and (2) a hostile work environment claim.  *See* Clark Decl., Ex. A, at 7.  Walton subsequently amended her charge by adding two occurrences to her hostile work environment claim: the Notice of Proposed Removal and the May 2022 misconduct investigation.  *See* Clark Decl., Ex. B, at 13. ("I alleged that both of these actions are part of an ongoing hostile work environment based on my sex, race, and protected EEO activity.").  EPA accepted the request as an amendment to the hostile work environment claim alone.  *See* Clark Decl., Ex. C, at 14.  In its Final Agency Decision, and in accordance with Walton's framing, the agency investigated the "unacceptable" rating and the Performance

Improvement Plan as the only "independently actionable claims framed as disparate treatment." *See* Clark Decl., Ex. E, at 19.  It evaluated the Notice and the misconduct investigation "solely as part of a hostile work environment claim." *Id.* ("[T]his [Final Agency Decision] will analyze [the "unacceptable" rating] and [the Performance Improvement Plan] as independent claims of disparate treatment and all other claims will be a part of Complainant's overall hostile work environment claim.").

Before this Court, Walton brings discrimination and retaliation claims based on the Notice and misconduct investigation, as well as other acts not raised in her EEO charge or amendment request, including: the 2021 denial of a performance bonus, her 2022 removal from a "highly significant" OIG investigation, the failure to assign her to new investigations, and the failure to issue her a full year appraisal for Fiscal Year 2022.  *See* Am. Compl. ¶¶ 97, 102–11; Clark Decl., Ex. A, at 7.  But before the EEO, Walton did not raise discrete claims for discrimination or retaliation based on those acts.  *See Mount*, 36 F. Supp. 3d at 83–84 (a Title VII plaintiff must "timely exhaust administrative remedies for each discrete act alleged").  Nor did she object to EEO's response to her amendment request, which specified that her allegations of the Notice of Proposed Removal and misconduct investigation were only "accepted for investigation as a claim of hostile work environment."[2]  *See* Clark Decl., Ex. D, at 14.  In general, a plaintiff's "failure to respond to the framing of the issue supports a finding that a plaintiff has failed to exhaust his administrative remedies with respect to those claims not approved by the EEO." *McKeithan v. Boarman*, 803 F. Supp. 2d 63, 68 (D.D.C. 2011) (citations and quotations omitted) (collecting cases).

---

[2] Walton does not bring a hostile work environment claim before this Court.

Accordingly, the Court finds that Walton has only administratively exhausted her discrimination and retaliation claims as based on her Fical Year 2021 "unacceptable" rating and her placement on the Performance Improvement Plan.  It will grant the defendant's motion to dismiss her unexhausted claims relating to the 2021 denial of a performance bonus, her 2022 removal from a "highly significant" OIG investigation, the failure to assign her to new investigations, and the failure to issue her a full-year appraisal for Fiscal Year 2022.  *See* Am. Compl. ¶¶ 97, 102–11.

### B.    Venue

Under the Title VII venue provisions set forth in 42 U.S.C. 2000e-5(f)(3), a plaintiff can bring an action: (1) in any judicial district in the state in which the unlawful employment practice is alleged to have been committed, (2) in the judicial district in which the employment records relevant to such a practice are maintained and administered, or (3) in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice; and (4) in the event venue cannot be found in any of the foregoing jurisdictions, where the defendant has its principal office.  The ordinary rule is that "venue must be established as to each separate cause of action." *Beattie v. United States*, 756 F.2d 91, 100 (D.C. Cir. 1984), *abrogated on other grounds by Smith v. United States*, 507 U.S. 197 (1993).  The plaintiff bears the burden of establishing that she filed suit in the proper venue.  *Slaby v. Holder*, 901 F. Supp. 2d 129, 132 (D.D.C. 2012).

As alleged, Walton has been employed in the Dallas field office of OIG since 2006, and she conducted her investigations out of that office.  Am. Compl. ¶ 9.  She was supervised by Westfall, who was also stationed in the Dallas field office.  *Id.* ¶ 10.  Walton's remaining discrimination claims relate to Westfall's conduct in Dallas, Texas—that is, Westfall giving her

an "unacceptable" performance rating in Fiscal Year 2021 and placing her on a Performance Improvement Plan.  Under the first provision of the venue statute, the judicial district where the alleged conduct was "committed" is the Northern District of Texas.  42 U.S.C. 2000e-5(f)(3); *see e.g.*, *Slaby*, 901 F. Supp. 2d at 134–35 (venue was proper in Virginia where the performance assessment of the plaintiff occurred); *Hoskins v. Napolitano*, 842 F. Supp. 2d 8, 12 (D.D.C. 2012) (venue was proper in Maryland in a disability discrimination suit brought by a U.S. Coast Guard worker employed in Baltimore).

Walton argues that venue is also proper in the District of Columbia where her employment records are maintained and administered.  42 U.S.C. § 2000e–5(f)(3); *see* Opp'n at 6–7, Dkt. 22. But her complaint contains only one brief line in support of that assertion: Walton states that her "employment records are maintained in hard copy form at the [EPA] headquarters human resources department in Washington, D.C."  Am. Compl. ¶ 3.  Even accepting that conclusory allegation, the existence of a copy of Walton's records in the District of Columbia does not establish that this district is the "*locus* of the relevant employment records."  *Washington v. Gen. Elec. Corp.*, 686 F. Supp. 361, 363 (D.D.C. 1988) (emphasis added) ("[T]he statute's use of the singular" establishes that venue lies "only in the one judicial district in which the complete, "master" set of employment records is "maintained and administered."); *see Middlebrooks v. Eng.*, No. 5-cv-556 (JDB), 2005 WL 3213956, at *3 (D.D.C. Nov. 2, 2005) (a plaintiff may not establish venue "in any place where employment records of any type can be found").  Moreover, Walton does not allege that the specific relevant records—those concerning her 2021 performance rating and Performance Improvement Plan—are located in the District of Columbia.  *Middlebrooks*, 2005 WL 3213956, at *3 (finding venue improper in the District of Columbia when plaintiff's Official

9

Personnel File was kept in the District but records of his "performance appraisals, disciplinary counseling notes and relevant internal memoranda" were kept in Maryland).

Walton has failed to show that venue is proper in the District of Columbia. Because venue is improper in this district, the Court makes no determination as to whether Walton has stated claim under Rule 12(b)(6) on her remaining, exhausted claims. Instead, the Court will consider whether transfer is appropriate. *See Cameron v. Thornburgh*, 983 F.2d 253, 257 (D.C. Cir. 1993) (transferring venue when the sole count providing sustaining venue was dismissed).

### C. Transfer

Under 28 U.S.C. § 1406(a), the Court is empowered to transfer a case in which venue was improperly laid to any judicial district in which it might have been brought. The decision whether to transfer or dismiss is entrusted to the district court's discretion. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Because the plaintiff's claims will be time-barred if this action is dismissed, *see* Opp'n at 7, the Court finds it is in the interest of justice to transfer the remaining claims to the Northern District of Texas,[3] *see Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, 17 (D.D.C. 2009).

### CONCLUSION

For the foregoing reasons, the defendant's Motion to Dismiss, Dkt. 21, is granted in part. A separate order consistent with this decision accompanies this memorandum opinion.

---

[3] Walton argues this case should be transferred to the District Court for the Western District of Washington because Perez is stationed in OIG's Seattle field office. *See* Opp'n at 41. But venue is improper there because, as the Court has explained, Walton failed to administratively exhaust either her retaliation or discrimination claims that were based on Perez's alleged conduct in opening the misconduct investigation.

DABNEY L. FRIEDRICH
United States District Judge

February 18, 2025

11